IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES DAVILA, JR., and VIRGIL DENNISON, | ) ) | |
| Plaintiffs, | ) | 2:09-cv-130 |
| v. | ) ) | |
| VICTORY SECURITY AGENCY, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending now before the Court is DEFENDANT VICTORY SECURITY AGENCY'S MOTION FOR SUMMARY JUDGMENT, filed at Document No. 14, with brief in support (Doc. No. 15), concise statement of material facts (Doc. No. 16), and appendix (Doc. No. 23). In response to Defendant's motion is PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 17), Plaintiffs' response to Defendant's concise statement of material facts (Doc. No. 18), Plaintiffs' counter statement of material facts (Doc. No.19), and appendix (Doc. No. 20). Defendant also filed a reply brief in support of its motion for summary judgment (Doc. No. 21) and a response to Plaintiffs' concise statement of material facts (Doc. No. 22). The motion is ripe for disposition.

**Statement of the Case**

Plaintiffs initiated this action by filing a complaint on February 4, 2009 (Doc. No. 1), and amended their complaint on March 18, 2009. (Doc. No. 4). With their amended complaint, Plaintiff Davila, who is African-American, and Plaintiff Dennison, who is Caucasian, allege a number of causes of action of employment discrimination made unlawful by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) *et seq.* ("Title VII"); Section 1 of the Civil Rights Act of 1866, 42 U.S.C. § 1981; and the Pennsylvania Human Relations Act, 43 Pa. C.S.A.

§ 955(a) *et seq.* ("PHRA"), to include having been subjected to discrimination due to race and retaliation for opposing discriminatory practices. More partiuclarly, Plaintiffs each individually raise four counts of discrimination, the structure of which is organized as follows: 1) race discrimination and retaliation in violation of 42 U.S.C. § 1981 (counts I and II); 2) race discrimination under Title VII (counts III and IV); 3) retaliation under Title VII (counts V and VI); and 4) discrimination under the PHRA (counts VII and VIII). All counts stem from events that occurred on or about December 13, 2007, the date upon which the employment of both Plaintiffs was terminated by Defendant. Generally speaking, Plaintiffs allege that their employment positions were terminated on that day due to race discrimination.

After careful consideration of Defendant's motion, the filings in support and opposition thereto, the memoranda of the parties, the relevant case law, and the record as a whole, the Court finds that genuine issues of material fact remain. For the reasons that follow, Defendant's motion will be denied.

**Standard of Review**

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. *Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.*, 898 F.2d 946, 949 (3d Cir.1990).

The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.1987). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 248. A fact is material when it might affect the outcome of the suit under the governing law. *Id.* Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324. The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249). Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Id*. (*citing Celotex*, 477 U.S. at 325). Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

## Legal Analysis

Defendant's motion advances two bases for summary judgment. The first targets the

3

discrimination claims included at Counts I through IV and in Counts VII and VII arguing that summary judgment is appropriate in light of Defendant's legitimate, non-discriminatory reason for the decision to discharge the Plaintiffs. The other basis targets the Title VII retaliation claims by arguing that the evidentiary record demonstrates no prima facie basis for recovery by the Plaintiffs. Plaintiffs, on the other hand, oppose the motion on both counts, and provide references to the evidentiary record in support of their opposition. The Court will address the two challenges *seriatim*.

A.  Genuine issues of material fact remain with respect to Plaintiffs' discrimination claims

As noted above, in moving for summary judgment on Plaintiffs' discrimination claims at Counts I through IV and VII and VIII, Defendant essentially presents one argument, namely that the evidentiary record demonstrates a legitimate, non-discriminatory reason for the decisions to discharge both Plaintiffs, and further, that the record does not evince a basis that such reasoning was a pretext for discriminatory animus.

The Court notes at the outset that while Plaintiffs allege the same acts of racial discrimination under three statutes (Title VII, 42 U.S.C. § 1981, and the PHRA), the analysis for purposes of summary judgment under the three is the same. *See Lewis v. University of Pittsburgh,* 725 F.2d 910 (3d Cir.1983)*, cert. denied,* 469 U.S. 892, 105 S.Ct. 266, 83 L.Ed.2d 202 (1984); *see also , Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000); *Blise v. Antaramian*, 409 F.3d 861, 866 (7th Cir. 2005); *Manatt v. Bank of Amercia, N.A.*, 339 F.3d 792, 797 (9th Cir. 2003); *see also Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 (3d Cir.2006)(claims under the PHRA are interpreted coextensively with Title VII claims).

In a race discrimination lawsuit, the familiar *McDonnell Douglas*[1] formulation regarding the appropriate burdens of proof and allocation of production of evidence govern and guide the analysis of the evidence presented on a motion for summary judgment. Accordingly, a plaintiff bears the initial burden of presenting a prima facie case.[2] Should a plaintiff make this showing, a presumption of discrimination is created and the burden shifts to the defendant employer to articulate some legitimate, nondiscriminatory reason for its decision. *Fuentes v. Perkie*, 32 F.3d 759, 763 (3d Cir. 1994); *Weldon v. Kraft, Inc.*, 896 F.2d 793, 797 (3d Cir.1990). The employer need only produce sufficient evidence to enable a factfinder to conclude that the action taken was motivated by a nondiscriminatory purpose. *Fuentes*, 32 F.3d at 763.

If the defendant is able to clear this relatively low hurdle, the presumption of discrimination evaporates and the onus is again on the plaintiff, who bears the ultimate burden of showing that a discriminatory purpose was a determinative or motivating factor in the decision. *Id.* at 764; *Bellissimo v. Westinghouse Elec. Corp.*, 764 F.2d 175, 179-80 (3d Cir.1985), *cert. denied*, 75 U.S. 1035 (1986). More particularly, the plaintiff must point to specific evidence of record from which a reasonable factfinder either (i) could disbelieve the legitimate, non-discriminatory reason(s) set forth by the employer; or (ii) could believe that an invidious

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

[2] To establish a prima face case of discrimination, the employee must demonstrate that (1) the employee is a member of a protected class; (ii) the employee was qualified for the position in question; (iii) the employee suffered an adverse employment decision; and (iv) circumstances exist that give rise to an inference of unlawful discrimination, such as might occur when similarly situated persons not within the protected class were treated more favorably. *McDonnell Douglas*, 411 U.S. at 802; *see Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 411 (3d Cir.1999); *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994).

discriminatory reason was more likely than not a determinative cause of the employment action. *Id.* The plaintiff can either prove this directly, by showing that discriminatory considerations motivated the defendant's actions, or indirectly, by showing that the rationale provided by the defendant is unworthy of credence. *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 638; *Weldon*, 896 F.2d at 797 (3d Cir.1993). Thus, a court's ultimate task in a race discrimination case is to determine whether a plaintiff has carried his burden of showing, by a preponderance of the evidence, that the employer intentionally discriminated against him. *Josey*, 996 F.2d at 637; *see Bellissimo*, 764 F.2d at 179.

Following the structure of the *McDonnell Douglas* framework, Defendant's motion does not argue that Plaintiffs have failed to demonstrate a prima facie case. To the contrary, Defendant assumes that Plaintiffs have met this initial burden. *See* Doc. No. 15 at p. 4. Instead, Defendant moves for summary judgment as to Counts I - IV and VII - VIII by averring that the record demonstrates that Defendant had a legitimate non-discriminatory reason for discharging the Plaintiffs, and that there is no evidence to demonstrate that the reason was pretext for discrimination. According to Defendant, Plaintiffs were terminated because they removed property belonging to the Mars Area school district, more specifically a chair, from the high school grounds without authority, and subsequently refused to return it when told to do so.

The following facts are uncontroverted. Both Plaintiffs began working for Defendant as security officers at the Mars Area High School in or around the months of August and September of 2007. Plaintiffs routinely worked the afternoon shift of 3:00 p.m. to 11:00 p.m. and were responsible for general security duties such as patrolling the school property, checking identification of visitors, and maintaining a log book.

6

When he initially began working for Defendant, Plaintiff Dennison also worked alongside Bob Sallman, the grandfather of Plaintiff Dennison's wife. At the time, Sallman was the Defendant's site supervisor for the high school location. At some unspecified point, Sallman's employment was terminated and Ryan Quahliero, a fellow security officer employed by Defendant, began acting as the site supervisor for the high school.[3] Charles McKnight was the northwest operations manager for Defendant, an area that included the Mars Area high school. It was in a meeting with Plaintiffs on December 13, 2007 that McKnight formally terminated their employment. On the date of their discharge, Plaintiffs were each given a written form indicating two bases for the decision, "insubordination" and "violation of company policy, company rules or safety rules." *See* Doc. No. 20-1, at Davila Dep. Tr. p. 84.

Beyond these agreed upon facts, the respective positions of the parties as to Defendant's reasoning for the decision to discharge Plaintiffs diverge significantly. Defendant's reasoning for discharging Plaintiffs was because they removed a chair from the security office that was the property of the high school and refused to return it. *See* Doc. No. 15. According to McKnight, the decision to terminate was a joint decision made by he, the acting principal of the high school at the time, and Don Dixon, who was Defendant's director of operations at the time.[4] That decision was based upon information regarding the chair incident relayed to McKnight by

---

[3] During his deposition, Plaintiff Davilla referred to Quahliero as the site supervisor. For his part, Quahliero described his role as that of being "in charge of everything at the school, including scheduling" without ever having been officially designated in a supervisory position *See* Doc. No. 23, Quahliero Dep. Tr. at p. 16.

[4] In opposition to the motion for summary judgment, Plaintiffs provided deposition excerpt testimony from both the acting principal and Don Dixon, both of whom testified as to not having participated in the decision. *See* Doc. No. 20 at exhibit numbers 13 (Depo. Tr. of Anna Saker) and 15 (Dep. Tr. of Don Dixon).

Quahliero.

All information regarding the removal of the chair that was known by McKnight was provided to him by Quahliero. McKnight testified during his deposition that on December 12, 2007, the day before Plaintiffs were discharged, Quahliero informed him of removal of the chair from the security office. More particularly, Quahliero allegedly discovered the chair was missing when he reported to work that morning. After unsuccessfully attempting to locate the chair within the high school, Quahliero deduced that Plaintiffs were responsible. Quahliero questioned Plaintiffs after they arrived in the afternoon, who initially refused to respond to his questions before ultimately acknowledging that they removed the chair. Plaintiffs allegedly did so under their mistaken belief that the chair was not school property, but actually belonged to Sallman. Shortly after receiving this information from Quahlieor, McKnight contacted each Plaintiff by telephone and told them that their employment was being terminated and to return their uniforms and badges. Upon being notified, Plaintiffs left the high school grounds and met with McKnight the following day.

Not surprisingly, Plaintiffs version of events is different. According to Plaintiffs, on December 12, 2007 Quahliero did not confront Plaintiffs together about the removal of the chair. Plaintiff Dennison arrived to begin his shift that day before Plaintiff Davila, and was asked by Quahliero about the chair. In response, Dennison answered that he did not know where the chair was. Quahliero then asked Plaintiff Dennison about a discarded piece of adhesive tape that was in the trash can in the security office. Apparently, written on the tape was a profane statement. Once again, Plaintiff Dennison responded that he did not know anything about the tape. Plaintiff Davila then entered the security office, having just arrived for his shift. Plaintiff Dennison

stepped out of the office at that point and sat at a desk just outside the open door to the office. Plaintiff Davila claims that he was asked not about the chair at all, but only about the discarded piece of tape. Plaintiff Davila acknowledged that he and Plaintiff Dennison were responsible for the tape. Apparently angry, Quahliero directed a profane racial slur to Plaintiff Davila which was overheard by Plaintiff Dennison. Plaintiff Davila told Qauhliero something to the effect that Quahliero should not talk to him in such a manner, and further asked Plaintiff Dennison, in front of Quahliero, if Dennison had heard what Quahliero had just said to him. Plaintiff Dennison acknowledged that he did hear the comment and that he would attest to having heard it in the future, which further apparently antagonized Quahliero. Quahliero allegedly told both at that point something to the effect that "You're gone", and left the office at that point to report to McKnight that both Plaintiffs should be discharged.

Without the need for much elaboration, the Court holds that genuine issues of material fact clearly remain and that summary judgment is not appropriate. This is so despite Defendant's point that it was McKnight's decision to discharge Plaintiffs, and that Quahliero did not have the authority to do so. In response, Plaintiffs correctly note that if a subordinate who exhibits discriminatory animus influenced or participated in the decision to determinate the employment, that such discriminatory influence infects the ultimate decision. Doc. No. 17 at § II.B.2. (*citing Abramson v. William Patterson Coll. of NJ*, 260 F.3d 265, 286 (3d Cir. 2001)). Taken as a whole, jury factual findings consistent with the Plaintiffs' explanation of what occurred could form the basis for a determination that Defendant's proffered legitimate nondiscriminatory reason for the decision was pretext for unlawful discrimination. For this reason, Defendant's motion for summary judgment on Counts I through IV, VII, and VIII will be denied.

B.  Genuine issues of material fact remain with respect to Plaintiffs' discrimination claims

Defendant further moves for summary judgment with respect to Counts V and VI, the two counts alleging retaliation under Title VII. *See* Doc. No. 15 at pp. 6 - 7. More particularly, Defendant summarily argues that Plaintiff Davila did not engage in any protected activity that in response to which he suffered retaliation, and further argues that the decision to terminate the employment of Plaintiff Dennison was made independent of, and unaware of, any protected activity. *Id.*

Under Title VII, it is unlawful "for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." To establish a prima facie case of retaliation under Title VII, a plaintiff must tender evidence that: (i) he engaged in activity protected by Title VII; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. *Moore v. City of Philadelphia*, 461 F.3d 331, 340 (3d Cir.2006).

In response in opposition, Plaintiff Davila identifies evidence within the record, namely his own testimony, that he complained to McKnight during the December 12, 2007, phone conversation with McKnight about the racial slur allegedly made by Quahliero before having his employment terminated. Likewise, Plaintiff Dennison responds that his protected activity was his verbal indication that he overheard Quahliero's racial slur and that he would be a witness on Plaintiff Davila's behalf to attest that fact, activity that was known to Quahliero (who, according

to Plaintiffs, retaliated by influencing McKnight's decision.)  Once again, genuine issues of material fact remain that must be determined by the finder of fact.  For this reason, Defendant's motion for summary judgment on Counts V and VI will be denied.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES DAVILA, JR., and VIRGIL DENNISON, | ) ) | |
| Plaintiffs, | ) | 2:09-cv-130 |
| v. | ) ) | |
| VICTORY SECURITY AGENCY, | ) | |
| Defendant. | ) | |

## ORDER OF COURT

**AND NOW**, this 28th day of June, 2010, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** that DEFENDANT VICTORY SECURITY AGENCY'S MOTION FOR SUMMARY JUDGMENT [DOC. NO. 14] is **DENIED.**

                                                BY THE COURT:

                                                s/ Terrence F. McVerry
                                                United States District Court Judge

cc:    Samuel J. Cordes, Esquire
        Email: scordes@ocmilaw.com
        Christine T. Elzer, Esquire
        Email: celzer@ocmilaw.com

        Anthony E. Patterson, Esquire
        Email: AEPLawfirm@aol.com